IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No_____

STANLEY EUGENE DAVES.

     Plaintiff,

v.

ADAMS COUNTY GOVERNMENT, COLORADO, a Government Entity,

4430 Adams County Pkwy,

Brighton, Colorado. 80601

Phone No. 1+ (303)659-2120

The Adams County Government is being sued in their official capacity

ADAMS COUNTY COLORADO BOARD OF COMMISSIONERS,

4430 S Adams County Pkwy, unit C5000A

Brighton, Co 80601

Phone (720)523-6100

The Adams County Board of Commissioners are being sued in their official and individual

capacity,

ADAMS COUNTY SHERIFF MICHAEL MCINTOSH,

332 N. 19th Ave

Brighton, Co 80601

Phone (303)654-1850

Adams County Sheriff Michael McIntosh is being sued in their official and individual capacity,

ADAMS COUNTY DETENTION FACILITY SARGEANT COMMANDER WRIGHT,

C/O Adams County Detention Facility

150 N 19th Ave

Brighton, CO 80601

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2019 OCT 15 PM 3: 19

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLK

Phone (303)654-1850

Adams County Sergeant Commander Wright is being sued in his official and individual capacity,

ADAMS COUNTY DETENTION FACILITY SARGEANT COMMANDER MYKELANN WISE,

C/O Adams County Detention Facility

150 N 19th Ave

Brighton, CO 80601

Phone (303)654-1850

Adams County Sergeant Commander Mykelann Wise is being sued in his official and individual capacity,

ADAMS COUNTY SHERIFF DEPUTY LEONARD VASQUEZ,

C/O Adams County Detention Facility

150 N 19th Ave

Brighton, CO 80601

Phone (303)654-1850

Adams County Deputy Sheriff Leonard Vasquez is being sued in his official and individual capacity,

ADAMS COUNTY SHERIFF DEPUTY SCOTT FANSELOW,

C/O Adams County Detention Facility

150 N 19th Ave

Brighton, CO 80601

Phone (303)654-1850

Adams County Deputy Sheriff Scott Fanselow is being sued in his official and individual capacity,

ADAMS COUNTY DETENTION FACILITY EMPLOYEE, VICTOR RAMIREZ, SANDOVAL

C/O Adams County Detention Facility

150 N 19th Ave

Brighton, CO  80601

Phone (303)654-1850

Adams County Detention Facility employee Victor Ramirez, Sandoval is being sued in his official and individual capacity,

ADAMS COUNTY SHERIFF DEPUTY STANLEY WATSON,

C/O Adams County Detention Facility

150 N 19th Ave

Brighton, CO  80601

Phone (303)654-1850

Adams County Deputy Sheriff Stanley Watson is being sued in his official and individual capacity,

ADAMS COUNTY SHERIFF DEPUTY ADAM MOHR,

C/O Adams County Detention Facility

150 N 19th Ave

Brighton, CO  80601

Phone (303)654-1850

Adams County Deputy Sheriff Adam Mohr is being sued in his official and individual capacity,

ADAMS COUNTY SHERIFF DEPUTY CRISTAIN CRUZ,

C/O Adams County Detention Facility

150 N 19th Ave

Brighton, CO  80601

Phone (303)654-1850

Adams County Deputy Sheriff Christian Cruz is being sued in his official and individual capacity,

ADAMS COUNTY SHERIFF DEPUTY CORY ANDERSON,

C/O Adams County Detention Facility

150 N 19th Ave

Brighton, CO  80601

Phone (303)654-1850

Adams County Deputy Sheriff Cory Anderson is being sued in his official and individual

capacity,


ADAMS COUNTY SHERIFF DEPUTY BRADLEY FRANCH,

C/O Adams County Detention Facility

150 N 19th Ave

Brighton, CO  80601.

Phone (303)654-1850

Adams County Deputy Sheriff Bradley French is being sued in his official and individual

capacity,


ADAMS COUNTY SHERIFF DEPUTY JONATHAN ROHDE.

C/O Adams County Detention Facility

150 N 19th Ave

Brighton, CO  80601

Phone (303)654-1850

Adams County Deputy Jonathan Rohde is being sued in his official and individual capacity,


ADAMS COUNTY SHERIFF DEPUTY MATTHEW THORNTON

C/O Adams County Detention Facility

150 N 19th Ave

Brighton, CO  80601

Phone (303)654-1850

Adams County Deputy Sheriff Matthew Thornton is being sued in his official and individual

capacity,

ADAMS COUNTY SHERIFF DEPUTY CHARLES GOODNIGHT

C/O Adams County Detention Facility

150 N 19th Ave

Brighton, CO  80601

Phone (303)654-1850

Adams County Deputy Sheriff Charles Goodnight is being sued in his official and individual capacity,

CORRECT CARE SOLUTIONS, LLC,

1283 Murfreesboro Pike Ste 500,

Nashville, TN  37217

Phone 1+ (800)592-2974

Correct Care Solutions is being sued in their official capacity.

CORRECT CARE SOLUTIONS EMPLOYEE DOCTOR CHRISTOPHER ROSE

C/O Adams County Detention Facility

150 N 19th Ave

Brighton, CO  80601

Phone (303)654-1850

Correct Care Solutions employee Doctor Christopher is being sued in his individual and official capacity.

CORRECT CARE SOLUTIONS EMPLOYEE NURSE KATELYN

C/O Adams County Detention Facility

150 N 19th Ave

Brighton, CO  80601

Phone (303)654-1850

Correct Care Solutions employee Nurse Katelyn is being sued in her individual and official capacity.

CORRECT CARE SOLUTIONS EMPLOYEE JANE DOE ONE

C/O Adams County Detention Facility

150 N 19th Ave

Brighton, CO  80601

Phone (303)654-1850

Correct Care Solutions employee Jane Doe One is being sued in her individual and official capacity.


CORRECT CARE SOLUTIONS EMPLOYEE JANE DOE TWO

C/O Adams County Detention Facility

150 N 19th Ave

Brighton, CO  80601

Phone (303)654-1850

Correct Care Solutions employee Jane Doe Two is being sued in her individual and official capacity.


CORRECT CARE SOLUTIONS EMPLOYEE JANE DOE THREE

C/O Adams County Detention Facility

150 N 19th Ave

Brighton, CO  80601

Phone (303)654-1850

Correct Care Solutions employee Jane Doe Three is being sued in her individual and official capacity.


CORRECT CARE SOLUTIONS EMPLOYEE JANE DOE FOUR

C/O Adams County Detention Facility

150 N 19th Ave

Brighton, CO  80601

Phone (303)654-1850

Adams County Deputy Sheriff Leonard Vasquez is being sued in her official and individual capacity,

**Defendants:**

## ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff, Stanley E. Daves, Pro SA hereby brings this Complaint and allege as follows:

## I.    INTRODUCTION:

1. Stanley Daves is a fifty-four year old United States citizen residing in Brighton Colorado. Mr. Daves became disabled at the age of seventeen after being struck by a DUI driver while a pedestrian attempting to change a flat tire on a Colorado highway, resulting in traumatic brain and internal injuries, and the amputation of his left leg and subsequently PTSD.

2. Stanley Eugene Daves is filing this action for events that took place from October 20, 2017 through June 12, 2018 at the Adams County Detention Facility in Brighton Colorado, following his arrest on a warrant on October 06, 2017.

3. This is a case about the intentional abuse of Stanley Daves, an "at risk disabled adult male" being detained at the Adams County Detention Facility. The Defendants had a simple responsibility to insure the safety and well-being of the Plaintiff and to make sure he appeared in court.

4. Defendants knowingly, improperly, and with deliberate indifference to the Plaintiff's established constitutional rights, failed to operate ACDF in a lawful and constitutional manner by failing provide to services that were made readily available to non disabled detainees. The Plaintiff sustained serious physical injury and psychological harm as a proximate result of Defendants' policies and the actions to effectuate those policies.

5. Defendants' actions as described herein were taken in accordance with ACDF custom, policy, and/or practice.

6. Defendants persisted in these policies and actions even after being made aware of their unconstitutionality by people within the general public, employees of the ACDF and attorneys visiting prisoners. Therefore Defendants were well aware of that these policies and actions were in violation of state and federal law.

7. Defendants persisted in these policies and actions after assuring the Plaintiff that they would cease illegal actions.

8. Defendants violated the rights of Stanley Daves under the First and Sixth Amendment of the Constitution of the United States of America, the Due Process Clause "No Punishment", the Equal Protection Clause, Failure to Provide Medical Care and Treatment and Municipal Liability of the Fourteenth Amendment to the Constitution of the United States of America, the Rehabilitation Act of 1973, and the Americans with Disabilities Act.

9. Plaintiff's rights were further violated by Adams County and Defendant Supervisory Officials when, based upon official custom, policy, and/or practice, the Adams County Government and Defendant Supervisors failed to take adequate steps to either train or supervise their subordinate.

10. Defendants were deliberately indifferent to their knowledge that Plaintiff was suffering physical and emotional injuries as a result of their custom, policies, and practices. Defendants continued their abusive and illegal course of action despite this knowledge. Defendants' conduct was so obviously violative of Plaintiff's rights and Plaintiff's resulting injuries so severe that it is shocking to the conscience.

11. Defendants' conduct under color of law proximately caused the deprivation of Plaintiff's federally protected rights resulting in grievous injuries. Defendants' conduct was done willfully and wantonly and/or with reckless disregard of Plaintiff's rights and feelings. Stanley Daves continues to suffer the results of the extensive abuses he was subjected to by Defendants.

12. This is an action for damages and other relief arising under the United States Constitution and the laws of the United States.

## II.    JURISDICTION:

13. This action arises under the Constitution and the laws of the United States, and is brought pursuant to Title 42 U.S.C. § 1983

14. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § § 1331 and 1367. Jurisdiction supporting Plaintiff's claims for attorney fees and costs is conferred by 42 U.S.C. § 1988 and 42 U.S.C. § 12131, 12133 et seq. 29 U.S.C. 794a AND 28C.F.R. 53.101 et seq.

15. Venue is proper in the District of Colorado pursuant to 28 U.S.C. §1391(b). All the events alleged herein occurred within the State of Colorado, and all of the parties are residents of the State.

## III.    PARTIES

## A. PLAINTIFF INFORMATION

16. Stanley E. Daves

1523 Cherry Street,

Brighton, Colorado. 80601.

Home phone no. (303)654-8298 Cell phone no. (720)755-0902

Email address 6765stanley@gmail.com

17. At all times pertinent hereto, the Plaintiff, Stanley E. Daves, was a citizen of the United States of America and a resident of the State of Colorado "being detained at the Adams County Detention Facility.

## B. DEFENDANT(S) INFORMATION:

18. "Adams County" is a political subdivision of the State of Colorado and is the public entity responsible for Adams County and the Adams County Detention Facility (ACDF"). ACDF is operated by the Adams County Sheriff's Department.

19. At all times relevant to the subject matter of this litigation, Defendant Sheriff Michael McIntosh was a citizen of the United States and a resident of Colorado. At all relevant time Michael McIntosh was acting under color of state law in his capacity as the Adams County Sheriff. Defendant McIntosh was responsible for training and supervising all other Defendants and other employees of the Adams County Sheriff's Department working at ACDF, for setting jail policy for the county and the overall management of ACDF, and for insuring the health and welfare of all persons detained in ACDF.

20. The Adams County Board of Commissioners. The county commissioners are constitutional officers who act collectively as the governing board in charge of controlling, maintaining, and supervising county property, auditing and authorizing of claims against the county, receiving bids and authorizing contracts, including contracts with medical providers for the county jail and the Colorado Department of Corrections for placement of inmates in county jail. The powers granted to the board by the state are broad, which allow the board independence in judgment. At all relevant time the Adams County Board of Commissioners was acting under color of state law in their official capacity.

21. Defendant(s) Adams County, Adams County Board of Commissioners and Defendant Sheriff Michael McIntosh, in their official capacity, are collectively referred to as "Adams County Defendants."

22. At all times relevant to the subject matter of this litigation, Defendant Leonard Vasquez was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant Leonard Vasquez was acting under color of state law in his capacity as a Deputy Sheriff employed by the Adams County Sheriff's Office.

23. At all times relevant to the subject matter of this litigation, Defendant Deputy Scott Fanselow was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant Scott Fanselow was acting under color of state law in his capacity as a Deputy Sheriff employed by the Adams County Sheriff's Office.

24. At all times relevant to the subject matter of this litigation, Defendant Victor Sandoval Ramirez was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant Victor Sandoval Ramirez was acting under color of state law in his capacity as a Jail Support Staff and/or a Deputy Sheriff employed by the Adams County Sheriff's Office.

25. At all times relevant to the subject matter of this litigation, Defendant Sergeant Commander Wright was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant Wright was acting under color of state law in his capacity as a Sergeant Commander was employed by the Adams County Sheriff's Office.

26. At all times relevant to the subject matter of this litigation, Sergeant Commander Mykelann Wise Wright was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant Sergeant Commander Mykelann Wise was acting under color of state law in his capacity as a Sergeant Commander was employed by the Adams County Sheriff's Office.

27. At all times relevant to the subject matter of this litigation, Defendant Deputy Stanley Watson was a citizen of the United States and a resident of Colorado. At all relevant

times, Defendant Deputy Stanley Watson was acting under color of state law in his capacity as a Deputy Sheriff employed by the Adams County Sheriff's Office.

28. At all times relevant to the subject matter of this litigation, Defendant Deputy Adam Mohr was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant Adam Mohr was acting under color of state law in his capacity as a Deputy Sheriff employed by the Adams County Sheriff's Office.

29. At all times relevant to the subject matter of this litigation, Defendant Deputy Christian Cruz was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant Christian Cruz was acting under color of state law in his capacity as a Deputy Sheriff employed by the Adams County Sheriff's Office.

30. At all times relevant to the subject matter of this litigation, Defendant Deputy Cory Anderson was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant Cory Anderson was acting under color of state law in his capacity as a Deputy Sheriff employed by the Adams County Sheriff's office.

31. At all times relevant to the subject matter of this litigation, Defendant Deputy Bradley French was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant Bradley French was acting under color of state law in his capacity as a Deputy Sheriff employed by the Adams County Sheriff's Office.

32. At all times relevant to the subject matter of this litigation, Defendant Deputy Jonathan Rohde was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant Jonathan Rohde was acting under color of state law in his capacity as a Deputy Sheriff employed by the Adams County Sheriff's Office.

33. At all times relevant to the subject matter of this litigation, Defendant Deputy Michael Brown was a citizen of the United States and a resident of Colorado. At all relevant

times, Defendant Michael Brown was acting under color of state law in his capacity as a Deputy Sheriff employed by the Adams County Sheriff's Office.

34. At all times relevant to the subject matter of this litigation, Defendant Deputy Charles Goodnight was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant Charles Goodnight was acting under color of state law in his capacity as a Deputy Sheriff employed by the Adams County Sheriff's Office.

35. At all times relevant to the subject matter of this litigation, Defendant Deputy Matthew Thornton was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant Matthew Thornton was acting under color of state law in his capacity as a Deputy Sheriff employed by the Adams County Sheriff's Office.

## Care Solutions Inc. (DBA "Wellpath") Defendant(s):

36. Correct Care Solutions, LLC. ("C.C.S."), now operating under the name of "Wellpath" is a for-profit Tennessee corporation doing business in the State of Colorado, with its principal street address located at 1283 Murfreesboro Pike Ste 500, Nashville, TN 37217. C.C.S. performs the typically governmental function of assuming responsibility for inmate health care. C.C.S. contracts with Adams County to provide medical services to inmates and detainees at ACDF and supervises and implements such care.

37. Correct Care Solutions Inc. ("C.C.S"), is a proper entity to be sued under 42 U.S.C. § 1983 for its deliberately indifferent policies, practices, habits, customs, procedures, training, and supervision of staff, including individual Defendants, with respect to the provision of medical care and treatment for inmates with serious medical needs. At all relevant times, Correct Care Solutions Inc. ("C.C.S"), was acting under color of state law and performing a central function of the state, thus making them liable under § 1983. The conduct of Correct Care Solutions Inc. ("C.C.S"), and its employees and agents, is chargeable to the government, and Correct Care Solutions Inc. ("C.C.S"), was acting jointly with the government actors.

38. At all times relevant to the subject matter of this litigation, Defendant Christopher Rose was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant Rose was acting under color of state law in his capacity as a Medical Doctor employed by Correct Care Solutions Inc. ("C.C.S.")

39. At all times relevant to the subject matter of this litigation, Defendant Katelyn was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant Katelyn was acting under color of state law in her capacity as a Nurse employed by Correct Care Solutions Inc. ("C.C.S.").

40. At all times relevant to the subject matter of this litigation, Defendant Jane Doe One was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant Jane Doe one was acting under color of state law in her capacity as a Nurse employed by Correct Care Solutions Inc. ("C.C.S").

41. At all times relevant to the subject matter of this litigation, Defendant Jane Doe Two was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant Jane Doe Two was acting under color of state law in her capacity as a Registered Nurse employed by Correct Care Solutions Inc. ("C.C.S").

42. At all times relevant to the subject matter of this litigation, Defendant Jane Doe Three was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant Jane Doe Three was acting under color of state law in her capacity as a Nurse employed by Correct Care Solutions Inc. ("C.C.S").

43. At all times relevant to the subject matter of this litigation, Defendant Jane Doe Four was a citizen of the United States and a resident of Colorado. At all relevant times, Defendant Jane Doe Four was acting under color of state law in her capacity as a Nurse employed by Correct Care Solutions Inc. ("C.C.S"),.

## IV.    FACTUAL ALLEGATIONS:

**44.** The factual allegations in this complaint are written as if being viewed by a third party and in chronicle order.

**45.** On or about October 07, 2017 Plaintiff Stanley Daves states that after being arrested on a warrant he was booked into the Adams County Detention Facility on the following morning.

**46.** During the intake process Stanley Daves was relieved of his 'Smart Puck" equipped prosthetic leg because it required the use of an electrical outlet to charge the devise on a daily basis. At that time the Smart Puck devise was dead and needing charged. The intake nurse (Jane Doe One) informed Stanley Daves that the charging if his prosthesis wasn't possible and that jail policy wouldn't allow it.

**47.** Stanley Daves was refused crutches and issued a wheelchair by the medical staff Jane Doe One and temporary housed B unit.

**48.** On or about October 08, 2017 Stanley Daves was classified with a "Bottom Bunk", "Lower Level" housing/medical restriction because of his disability. Stanley Daves, the Plaintiff interprets this as "Policy", and prays the Courts will agree with this Interpretation as meaning:

    **a.** Bottom Bunk: By "Policy" of the Adams County Government Prisoners' with a bottom bunk only restriction are to be housed in a cell on a bottom bunk "ONLY".

    **b.** Lower Level: By "Policy" of the Adams County Government prisoners with a lower level restriction are not to be on the stairs or on the upper levels of the facility.

**49.** All Defendants were aware or should have been aware of Plaintiffs disability and classification as "bottom bunk" and "lower level.

50. On October 09, 2017 The Plaintiff Stanley Daves was moved to permanent housing in E unit.

51. From October 09, 2017 through June 12, 2018 by order of Doctor Christopher Rose MD, the Plaintiff was to receive wound care treatment on an ulcerated sore on his stump and allowed to shower/bath in a "Handicap Accessible Shower/Bathtub" located in the facility medical unit.

52. On October 09, 2017 at approx. 11:15:00 The Plaintiff Stanley Daves was called to the E unit sally port and informed he had a legal visit. The tower officer directed him to wheel himself approximately 100 yards to B unit. This was despite the fact that the F unit, which was about 100 feet away, had a large visiting center located on the lower level of the facility where the legal visit could have taken place.

53. Upon arrival to B unit the floor deputy directed him to an elevator lobby located on the right side of the hallway to B-unit.

54. The deputy inserted a key into the elevator control panel to access the car. The plaintiff wheeled himself in the elevator. The deputy followed him in to the elevator, pushed a button on the control panel. The deputy escorted him to the upper level of the sally port to a small visiting booth.

55. On October 09, 2017 at approx. 11:51:00 the visit ended. The Plaintiff informed the tower deputy he was finished with his visit.

56. Within minutes the floor deputy arrived back to the visit area to escort the plaintiff back down. The deputy inserted a key into the elevator control panel and accessed the car. Stanley Daves wheeled himself in to the elevator fallowed by the deputy. The deputy then escorted him back down to the lower level sally port of B unit.

**57.** By order of the deputy, Stanley Daves "without escort" wheeled himself through the entire length of the facility back to E unit.

**Failure to provide elevator services:**

**58.** On October 20, 2017 at approx. 12:37:00 The Plaintiff Stanley Daves was called to the E unit sally port then directed to B unit for a legal visit.

**59.** On October 20, 2017 Stanley Daves states that by order of deputy and "without escort" wheeled himself through the entire length of the facility over to B unit. Again, the visiting center in the F unit was available at this time.

**60.** Upon arrival to B unit the tower officer, Mr. Victor Sandoval-Ramirez told the Plaintiff that the floor Deputy, Scott Fanselow and/or Deputy Leonard Vasquez had stepped away and would be with him shortly.

**61.** Deputies, Scott Fanselow and/or Deputy Leonard Vasquez arrived a few minutes later then directed the Plaintiff to the same elevator lobby used on October 09, 2017.

**62.** Upon arrival to the elevator Deputy Scott Fanselow or Deputy Leonard Vasquez made several attempts to summons the elevator car without using the key to no avail.

**63.** Stanley Daves states that after what seemed to be the passing of two to three minutes, he informed deputy that on his previous visit the escorting deputy had inserted a key into the elevator control panel to access the car.

**64.** With this information the deputy ordered Stanley Daves to stay put in the elevator lobby while he allegedly went in search for the key.

**65.** October 20, 2017 at approx. 12:55:00 Deputy Scott Fanselow or Deputy Leonard Vasquez returned to the elevator hallway alleging that he still had not located the elevator key.

66. The deputy ordered Stanley Daves to return back into B unit sally port to wait there while he continued to search for the key.

67. October 20, 2017 at approx. 13:00:00 while talking to the inmate porter Stanley Daves observed Attorney Gordon Sanchez on the upper level visiting area making gestures and pointing at his watch; as to insinuate "what's the holdup?"

68. Stanley Daves confronted the deputies about the situation, insisting he be taken up to meet with his attorney.

69. The deputy told the Plaintiff Stanley Daves that, that was "the only inmate /Handicap Accessible elevator in the facility" and there was nothing they could be done without the elevator key. According to the deputy "the key was lost" and he was not going to do anything else to locate the key.

70. Plaintiff was then told that if he needed to get up to the visit that bad he would have to "crawl/hop up" the stairs.

71. Stanley Daves states he attempted to navigate the stairs by placing his hands on the two handrails for support as he attempted to hop on his one leg up the two flights of stairs.

72. When the Stanley Daves reached the second to the top stair his foot suddenly slipped out from underneath him as if there was a slick substance on the step causing him to slip and fall, slamming his right shoulder into the handrail.

73. Stanley Daves immediately informed the tower officer, Mr. Victor Sandoval-Ramirez and the deputy(s) of his injury without a response.

74. Without option he continued to crawl on his hands and knees to the visiting booth where he met with the attorney for Approx. 30 out of the 60 minutes the attorney had set aside for this meeting. The visit ended at 13:40.00.

75. October 20, 2017 at approx. 13:40:00 Stanley Daves informed the tower officer, Mr. Victor Sandoval-Ramirez that he was finished with his visit and was ready to come back down.

76. Allegedly the Defendants Tower officer, Mr. Victor Sandoval-Ramirez, floor Deputy, Scott Fanselow and Deputy Leonard Vasquez still had not found the key to the elevator.

77. The Defendants Tower officer, Mr. Victor Sandoval-Ramirez, floor Deputy, Scott Fanselow and Deputy Leonard Vasquez offered no remedy to the situation of getting the Plaintiff safely back down from the second level of the facility; and although the deputies had knowledge of the plaintiff s injury they made no attempt to help the plaintiff back down the stairs.

78. The Defendants made comments along the lines of, "you made it up there by yourself you can make it back down the same way".

79. Plaintiff states that as he started his descend down the stairs his foot slipped again on the same step. Reinforcing the theory that there was a slippery substance present on that step.

80. Stanley Daves by the Grace of God maintained his balance and grip on the handrail but the momentum wrenched his arm into his shoulder intensifying the previous injury and causing him extreme pain.

81. The Tower officer, Mr. Victor Sandoval-Ramirez, floor Deputy, Scott Fanselow and Deputy Leonard Vasquez did nothing to help the Plaintiff safely descend the stairs.

82. October 20, 2017 approx. 13:45:00 upon reaching the lower sally port and the safety of the wheelchair the Plaintiff again informed the Deputy(s) that he was injured and now for a second time and that he believed there was something on the step that caused him to slip and fall.

83. Plaintiff states that he explained to the Defendants Tower officer, Mr. Victor Sandoval-Ramirez, floor Deputy, Scott Fanselow and Deputy Leonard Vasquez what had happened and that he needed medical attention.

84. The Defendants told Stanley Daves that there was nothing they could do to help him and refused him "access to medical care/attention".

85. The Defendants told the Plaintiff that he himself would have to notify the E unit deputy, of the situation as well as submit a medical kite when he returned to his unit.

86. The Defendants, in spite of Stanley Daves injuries and obvious pain made him wheel himself "without escort" across the entire length of the facility back to E unit.

87. Upon arrival back to E-unit the Plaintiff states that he informed the tower deputy John Doe One of the incident and his need for medical attention.

88. The tower deputy John Doe One said he would call the medical unit and page the Plaintiff when he would be able to go to the medical unit.

89. October 20, 2017 between 16:00:00 and 18:00:00 Stanley Daves was called to the medical unit for the daily prescribed wound care and shower.

90. Upon arrival Stanley Daves notified the C.C.S. nurse on duty (Katelyn) of the incident and injury. She informed the Plaintiff that she could not help; that the Plaintiff would have to write a kite in order to have the shoulder looked at.

91. October 20, 2017 at approx.10pm during the pm med line. Plaintiff submitted a handwritten medical kite to a C.C.S. nurse explaining the incident and requesting medical treatment.

92. October 20, 2017 through November 29, 2017. The Plaintiff Stanley Daves was allowed to go to the medical unit for wound care and shower only. The staff working in the medical unit continued to refuse the Plaintiff medical attention for his shoulder injury.

93. The Plaintiff states that as a response to his inquiries about treatment he was repeatedly told he was on the providers list and would be seen soon. *(After researching the previous legal actions against C.C.S. and their conduct in similar situations it was apparent that this has been a programmed response by C.C.S. and their staff. Therefore it is believed to be an actual "policy." To avoid expenditures by delaying the prisoners request for medical care until the prisoner is released or transferred to another facility).*

94. October 20, 2017 through December 2017 the plaintiff repeatedly requested medical attention by kite and verbally but continued to get the same response of "you are on the providers list." The Plaintiff was denied effective treatment until February 2018.

**Failure to provide Telephone Services**

95. The Defendants failed to provide reliable telephone service to Stanley Daves for 36+ days. Leaving the Plaintiff in a state of incommunicado, as seen in the Individual Posts, History for Adams County Detention Facility log dated 11/15/2017 through 12/22/2017.

96. The Plaintiff states that on November 12, 2017 the inmate telephone service in E unit (Only E unit) stopped working properly. Calls were of such poor quality and full of constant static neither party could understand what the other was saying. However, prisoners were still being charged for the attempted calls. Proper service was not fully restored until December 22, 2017.

97. Between the dates of November 18th through December 3rd Stanley Daves states that he submitted numerous handwritten kites and made face to face requests to Deputy Stanley Watson asking to use a telephone outside of unit E-6. Perhaps the prisoner phones in booking he asked. He explained he needed to get in contact with his attorney and family members in order to secure his estate, these requests were continually denied by the Defendant Deputy Stanley Watson and other Adams County Defendants.

**Failure to provide elevator services:**

98. November 17, 2017 at approx.16:30:00 Stanley Daves was called to the sally port in E unit for another legal visit with attorney Gordon Sanchez.

99. The Plaintiff states that on this occasion he was not directed to wheel himself over to B unit in order to access the alleged handicap elevator.

100.    November 17, 2017 approx. 16:35:00. In an act of deliberate indifference to Stanley Daves's health the deputy refused the Plaintiff elevator services. The deputy then directed the Plaintiff to the stairway in the E unit sally port and without any other option Stanley Daves was forced to climb/crawl on his hands and knees up the two flights of stairs in order to attend the Attorney/Client meeting.

101.    November 17, 2017 approx. 16:50:00. Plaintiff states the visit ended. In an act of deliberate indifference to Stanley Daves's health the deputy refused the Plaintiff elevator services in order to return to the lower level. Without the option of elevator services the plaintiff crawled on his hands and knees back down the two flights of stairs to the safety of the wheelchair.

102.    On November 17, 2017 the Plaintiff believes that forcing him to crawl up and down the stairs to access programs, services and activities became a adapted unwritten jail policy and/or a operational procedures during/or a source of amusement to the defendants.

**Failure to provide Access to Services (Religious)**

103.     November 20, 2017 10:30:00 the Plaintiff states that he was called to the sally port to attend religious services.

104.     This was the first time he was allowed to attend religious services even though he had made numerous requests to attend religious services dating back to mid-October.

105.     As if by "jail policy and/or procedure" in an act of deliberate indifference to Stanley Daves's health the deputy refused the Plaintiff elevator services. Without any other option Stanley Daves was forced to climb/crawl on his hands and knees up the two flights of stairs in order to attend Religious services.

106.     November 20, 2017 approx. <u>11:30:00</u>. Plaintiff states the services ended.

107.     As if by "jail policy and/or procedure" and without elevator service and/or assistance from the defendants the plaintiff was forced to crawl his way back down the two flights of stairs to the safety of the wheelchair.

**Failure to provide humane and ADA compliant Housing:**

108.     On or about November 23, 2017 the Plaintiff was accused of being involved in a physical altercation with another prisoner in cell 696.

109.     Plaintiff states he was removed from living unit E-6 then questioned by deputy Stanley Watson concerning the alleged altercation.

110.     Stanley Daves refused to give a statement other then, he doesn't recall.

111.     Stanley Daves subsequently sent to the medical unit for the next 24 hours, allegedly for observation due to his lapse of memory.

112.     Stanley Daves was put in a cold corner cell (corner cell are notorious for being cold and sometime referred to as "the Cooler") on the floor of the cell on a "boat" for 24 hour observation. This posed an issue for the plaintiff because of his disability and his shoulder injury.

113.     Stanley Daves ended up staying awake all night due to pain and the cold. He states that not once was his vital signs taken nor was he ever looked in on by medical staff throughout the night.

114.     On or around November 24, 2017 Stanley Daves was released from the medical unit and sent back to E unit. Upon his arrival and in spite of the plaintiff's disability and recent injury the Defendant Deputy Stanley Watson informed him that all the cells in unit E-6 were full and he was to be housed in the unit common area on the floor on a boat.

115.     Stanley Daves was once again put on the floor on a boat but this time he was housed in the common area of the unit.

116.     Because of Stanley Daves being disabled and the untreated shoulder injury he found it extremely painful, difficult and at times even impossible for him to pick himself up off the floor and in to the wheelchair without the help of other prisoners in order to access the restroom and retrieve his meals.

117.     On or around November 27, 2017 Stanley Daves was moved into cell 690. Cell E-690 has a history of flooding and is not ADA approved cell. As there was no handrails and the sink was inaccessible from a wheelchair.

118.     From November 27, 2017 to June 12, 2018 Plaintiff states that cell 690 had issues with periodic flooding caused by faulty common drain linked to cell 690 and a toilet that was set on a timer that often backup and overflow forcing the plaintiff and his cellmate to live with standing sewage water and human waste on the cell floor for up to 3 days in a row.

**119.**    The Plaintiff states that flooding of cell 690 was not an isolated circumstance.

**120.**    The Plaintiff recalls no less than three instances of cell E-690 flooding and left in disrepair for more than seventy two hours before maintenance would come and unclog the drains.

**121.**    Because of Stanley Daves disability, and the pain and discomfort from the shoulder injury and the lack of handrails his basic human needs of using the toilet, washing his hands or getting a drink of water was made unreasonable difficult. For the next six plus months Stanley experienced severe pain and discomfort trying to get on and off the toilet. He also had issues wiping himself after defecating due to the shoulder injury.

**122.**    The Plaintiff states that the basic human needs of getting a drink of water was made unreasonably difficult because of inaccessible placement of the sink in cell 690 from a wheelchair.

**123.**    As if that wasn't enough punishment Stanley Daves as stated earlier in the complaint, Stanley was being treated for a large open wound on his left leg stump. Stanley also has a history of contracting MURSA. Both of these issues are well-documented history in his ACDF medical records and therefore are to be considered "fact"! While being forced to live in cell 690 with standing waste water, sewage and human waste on the cell floor; Stanley did in fact contract a MURSA infection on his face. Not only did he contract MURSA he mysteriously contracted a severe fungal infection on the stump of his amputee leg before he was transferred to C.D.O.C.

**124.**    The Plaintiff was forced to reside in that cell up until June 12th at which time he was transferred to the Colorado Department of Corrections still suffering from serious injuries, confined to a wheelchair with a new impairment, MURSA, a severe fungal infection on the back of his amputated leg and stump. This was the result of the inhuman

conditions of cell 690 and once again Adams County Defendants failure to operate ACDF in a constitutional and legal manner.

**Failure to provide elevator services:**

125.     On December 01, 2017 10:30:00 The Plaintiff was called to the sally port for a legal visit.

126.     Once again as if by "jail policy and/or procedure the Plaintiff was directed to the stairs in E-unit sally port." In an act of deliberate indifference to Stanley Daves's health the deputies Adam Mohr and/or Stanley Watson refused the Plaintiff elevator services. Without any other option Stanley Daves was forced to climb/crawl on his hands and knees up the two flights of stairs in order to attend the Attorney/Client meeting

127.     Upon arrival to the upper E-unit sally port the Plaintiff discovered that the attorney waiting in the visiting booth was not his attorney.

128.     The attorney, Mr. McDavid from the Public Defender Office was looking for a Mr. Davis "not the Plaintiff Mr. Daves,"

129.     Mr. McDavid was clearly in a state of dismay after witnessing the Plaintiff crawl up the stairs on his hands and knees.

130.     Mr. McDavid questioned Stanley Daves as to why he had just witnessed him crawling up the stairs on his hands and knees. Stanley explained to the attorney that, that was just what the deputies make him do in order to access the upper level of the facility.

131.     The attorney asked the plaintiff a few more questions. The Plaintiff and the Attorney exchanged contact information then parted ways.

132.    Plaintiff states that as if by "jail policy and/or procedure" In an act of deliberate indifference to Stanley Daves's health the deputies Adam Mohr and/or Stanley Watson refused the Plaintiff elevator services. Without any other option Stanley Daves was forced to crawl on his hands and knees down the two flights of stairs to the safety of the wheelchair in the lower section of the sally port.

133.    Clearly this had become an unwritten operational procedure adopted by the deputies and jail staff.

134.    December 01, 2017 Plaintiff states that during the stair crawling Defendants deputy Stanley Watson and Deputy John Doe 4 were laughing and making derogatory statements about the Plaintiffs disability and referring to him as if he were a dog and mentioning something about the plaintiff filing grievances.

135.    Deputy Stanley Watson commenting to another deputy that he wasn't afraid of being sued, that anything he did was covered by the county.

136.    On or around December 07, 2017 the plaintiff was finely allowed to see Medical Provider Doctor Rose for the shoulder injury. During the examination Doctor Rose's bedside manner was that, that insinuated the Plaintiff was a nuisance and faking the injury.

137.    After performing a series of motion test to the Plaintiff s right shoulder Doctor Rose told the Plaintiff that he could not find anything wrong but, ordered X-rays.

138.    December 16, 2017 Plaintiff was called to the E unit sally port to meet with Chaplin McDonald concerning the issue he was having being forced to crawl up and down the stairs to attend religious services. In response to a kite Stanley Daves sent to the Chaplains office still trying to remedy the situation of the stairs.

139.    The Plaintiff states that Chaplin McDonald did nothing to resolve the problem. Her only suggestion was for the Plaintiff to write more kites.

140.    Later on December 16, 2017 Stanley Daves was called to the sally port for religious services presented by Volunteer Ronny from Faith Bible Chapel. The Defendant Deputy Cruz was the floor deputy on duty in E-unit.

141.    The Plaintiff states that as if by "jail policy or procedure" and without the offer of an alternative, assistance or elevator services. The Defendant, Deputy Cruz forced the Plaintiff to crawl/climb up two flights of stairs in order to attend religious services.

142.    Mr. Daves states that after the services ended, as if by "jail policy or procedure" he was forced to crawl back down the two flights of stairs in order to reach the safety of the wheelchair.

143.    Stanley Daves was forced to crawl on his hands and knees down the two flights of stairs. During his crawl he injured his right knee on the hard surface of the stairs.

144.    Stanley Daves informed Deputy Cruz of his injury and as if by jail policy Deputy Cruz made no attempt to get the Plaintiff medical attention.

145.    Deputy Cruz only response was to tell the Plaintiff that he would have to submit a medical kite.

146.    The Plaintiff states that he submitted a medical kite during the pm med line.

147.    December 19, 2017 4:25 pm. Mr. Daves submitted a Jail Operations Step 1 Grievance. Plaintiff states "I am looking for alternatives to crawl/climbing the stairs for legal visits and programs." Without response.

**Failure to provide Medical Services:**

**148.**    December 26, 2017 Plaintiff met with Doctor Rose. Doctor Rose gave plaintiff a brief summary of the X-ray results. Stating he had found no issues. Doctor Rose preformed another series of motion test. Doctor Rose then prescribed the plaintiff Neroproxin for pain which plaintiff states he did not receive for 48 hours.

**149.**    December 28, 2017 Plaintiff states he had still not received the Neroproxin medication. By not giving the Plaintiff prescribed med defendants failed to provide medical services.

**150.**    December 29, 2017 4:37pm. Plaintiff filed the step 2 Medical Grievance stating he was in extreme shoulder pain and that he still had not received the prescribed medication ordered on December 26, 2017.

**Failure to provide elevator services:**

**151.**    January 02, 2018. At approx. 11:55am the plaintiff was called to the sally port for another legal visit. Defendant Deputy Kleen was the unit deputy on duty.

**152.**    Plaintiff states that once again, as if by jail policy and/or procedure he was directed to the stairs.

**153.**    Stanley Daves was never offered elevator services or alternatives means of attending the legal visit and/or religious services other than crawling up the stairs on his hands and knees.

**154.**    January 02, 2018. At approx, 12:10:00 Plaintiff states that as he reached the first flight of stairs Mr. Henry Sapp, the tower guard in E unit yelled down to him in disbelief saying, "WTF Daves"? Why are you crawling up though stairs?"

155.    Mr. Sipe then ordered the plaintiff to stay put, not to move. Mr. Sapp then ordered the E unit tier porters to go up the stairs and assist the plaintiff up the remaining flight of stairs and to make sure Mr. Daves did not fall.

156.    The Plaintiff told Mr. Sapp that that was just what the deputies have been making him do if he wanted to attend legal visits or religious services.

157.    January 02, 2018 approx.12:20pm Plaintiff proceeded to his legal visit with the assistance of the porters.

158.    January 02, 2018. Approx. 12:55pm Plaintiff states the legal visit ended. At which time Mr. Sipe instructed the plaintiff to wait in the visiting booth for Deputy Kleen to arrive with the wheelchair to assist him down.

**Access of programs, services and activities remedy**

159.    On January 02, 2018, at approx. 1:00:00 Deputy Kleen arrived to the visiting booth with plaintiff's wheelchair.

160.    The Plaintiff climbed into the wheelchair and in-spite of his painful injuries, wheeled himself alongside of Deputy Kleen through E unit programs into a long hallway, up a steep hill to a service elevator.

161.    Deputy Kleen explained that this elevator was mainly used by the attorneys when visiting their clients. Deputy Kleen pushed the down button on the elevator access panel and the elevator door opened. "NO KEY REQUIRED"!

162.    Deputy Kleen expressed his amazement as to why the Plaintiff had been being forced to climb/crawl up and down the stairs in order to attend services of any kind. How ridiculous and unnecessary it all was.

163.     Deputy Kleen and the Plaintiff took the elevator down to the lower F unit. After going through a door on the left of the elevator they entered a very large visiting room consisting of a large number of face to face visiting booths; located in the middle of the room set two enclosed visiting booths used for attorney client legal visit...

164.     Deputy Kleen and the Plaintiff exited the visiting room ending up in lower F main hallway not 200 feet from the Plaintiffs cell.

165.     Directly across from the visiting center door set a bank of two more elevators. "NO KEY REQUIRED"!

166.     Deputy Kleen expressed his amazement as to why the Defendants made the Plaintiff wheel himself all the way to B unit to use an elevator when F unit visiting was on the lower level right around the corner from E unit where the Plaintiff was being housed.

167.     Seconds later the Plaintiff arrival back to E unit cell 690 safely, educated and disturbed.

168.     The Plaintiff states that from January 2, 2018 through June 12, 2018 at times he was still having crawl/hopping up and/or down the stairs but he was also being escorted by deputies through F unit using any of the three of the elevators located in F unit hallway.

169.     April 30, 2018 the Plaintiff was called to the E unit sally port for religious services where he met Deputy Ryan McCarthy. Deputy McCarthy explained to the Plaintiff as he awaited approval to escort the Plaintiff to bible study that he would no longer be allowed to be escorted to religious services or legal visits by order of his Sergeant Commander Wise and/or Wright.

170.     Deputy McCarthy stated that the reason given to him by his Sergeant Commander was that it went against jail operational policy and procedures.

171.     Deputy McCarthy also stated that the ACDF Command Staff was in the process of scheduling a meeting with Sheriff Michael Macintosh and policy makers concerning the old policy that was the driving force to Stanley Daves Being forced to crawl up and down the stairs and that the new policy would have the Plaintiffs name attached.

172.     Deputy Brown interrupted deputy McKarthy and the Plaintiff's conversation and ordered the Plaintiff to wheel himself out in to E unit corridor in a very aggressive manner.

173.     Defendant deputy Brown told the Plaintiff that according to "Jail policy and procedures" neither he nor other deputy were obligated to escort him to Bible Study or any other program for that matter and that the Plaintiff should be grateful that he was even being allowed to attend any programs. That he could give a shit about the Plaintiff being disabled.

174.     The Plaintiff states that at that point he told Deputy Brown to forget it. That he would just have to file step three grievance. At which time Deputy Brown tried to get the Plaintiff to fight him by getting in his face and calling him offensive and disrespectful names and getting in his face.(intimidation)

**Medical Services, failure to follow treatment plan:**

175.     February 07, 2018, The Plaintiff was taken to Platte Valley Medical Center for a medical evaluation for his shoulder injury.

176.     The Plaintiff was examined by Ms. Corbyn Werzbinski PT. DPT. for his right shoulder injury.

177.     Upon completion of the examination Ms. Corbyn Werzbinski PT. DPT. proceeded to show the plaintiff a series of exercises for him to do on daily basis.

178.     Ms. Corbyn Werzbinski PT. DPT. Then wrote an order to ACDF and C.C.S. stating the plaintiff was to do the prescribed physical therapy exercises on a daily basis as ordered using the three rubber exercise bands she included in the packet along with a follow-up return date.

179.     Stanley Daves was allowed to go to the medical unit for P/T for a short time before Defendants Deputies Brown, Anderson, Thornton and other un-named jail staff began to treat Stanley Daves as a nuisance, not a patient seeking medical treatment and stopped allowing him access to the medical unit not only for P/T but the use of the ADA approved shower and eventually wound care as well. The deputies and medical staff explained to the Plaintiff, alleging that the medical unit was often too busy to accommodate his needs and therefore taken off the list for the day. However, in spite of the excuses given to the Plaintiff other prisoners in E unit was continually being allowed to go to the medical unit for various reasons. Upon their return they told the Plaintiff that in fact the medical unit was not busy. One time in particular a prisoner returned to E unit and said that the staff was sitting around talking smack about various prisoners' including him, laughing and making fun of the plaintiffs disability.

180.     The plaintiff distinctly remembers Defendant Deputy Anderson being named as the instigator behind this. And further more recalls other instances where Deputy Anderson and Brown made derogatory statements about the Plaintiff and his disability.

181.     Stanley Daves was in constant pain and discomfort due to the injury(s) and being confined to the wheelchair. He continued to write kites to Doctor Rose and C.C.S. requesting further medical attention and an MRI. Once again being told by C.C.S employees Katelyn, Jane Doe One, Two and Three that he was on the providers list and would be seen in due time.

182.     Stanley Daves filed and exhausted the grievance process concerning the lack of medical care.

183.     On March 23, 2018 Stanley Daves was seen by Doctor Rose for a follow-up appointment concerning his shoulder injury. The Plaintiff explained that the pain and discomfort caused by the shoulder injury was not improving and in fact was getting worse. He went on to explain that being confined to the wheelchair only aggravated the injury and was causing him other issues concerning his ability to perform basic human needs such as getting on and off the toilet even being able to properly wipe himself after defecating.

184.     Doctor Rose for the most part ignored Stanley's complaints informed the plaintiff that he would be going back to Platte Valley Medical Center for the follow-up in the near future.

185.     The plaintiff informed Doctor Rose of the situation with the deputies and medical staff treating him with deliberate indifference to his medical needs by not allowing him daily access to medical services and ordered by Dr. Rose.

186.     After being transferred to C.D.O.C Stanley Daves made a request to C.D.O.C. medical providers to view his medical records from ACDF. The medical provider stated the records did not follow him to C.D.O.C. Stanley then asked the C.D.O.C. medical provider summons his medical records from ACDF. Upon review of these records he discovered in the notes from February 07, 2018 Ms. Corbyn Werzbinski made a diagnosis of a torn rotator-cuff in the right shoulder.

187.     C.C.S. Doctor Christopher Rose in spite of Stanley Daves's complaining about the obvious pain, discomfort and the mobility issues he was having due to the injury and his disability Doctor Rose continued to downplay the extent of Stanley Daves's injury(s):

188.     As if by ACDF and/or C.C.S. "policy(s) and/or procedure(s) Dr. Rose conceal the fact that Ms. Corbyn Werzbinski PT. DP diagnosed the injury as a probable "torn rotator

cuff injury" delaying the follow-up appointment with Ms. Corbyn Werzbinski with the hope that Stanley Daves would be released or transferred before the delay became too obvious.

189.     Adams County Defendants, C.C.S. and Doctor Rose refused Stanley Daves request for a much needed MRI to correctly and positively diagnose the extent of the plaintiffs' injury(s)

190.     The Adams County Defendants, C.C.S. and/or Doctor Christopher Rose went as far as to "shop around for a diagnosis and treatment plan that was more in line with the Adams County Defendants and C.C.S. policy(s) to avoid prisoner medical care costs, expenses as well as to divert liability. This was apparent when Stanley Daves was never taken back to Platte Valley Medical Hospital for his follow up appointment instead the Plaintiff was taken to another Physical Therapy provider for another evaluation with the same results as the first.

191.     On June 12, 2018 as contracted by Adams County Defendants and the State of Colorado Stanley Daves was transferred to the Colorado Department of Corrections. As if by policy(s) and/or procedure Stanley Daves severe bodily, emotional and constitutional injuries sustained while under the care supervision of the Adams County Defendants, Correct Care Salutations (WellCare), Sheriff Deputies at ACDF went untreated.

192.     Stanley Daves entered C.D.O.C. in an Adams County issued wheelchair, a severe right shoulder and knee injury, MURSA and a festering severe fungal infection. What weren't allowed to go with him were his prosthetic leg and his medical records.

**Refusing the Plaintiff his constitutional rights to necessary medical mobility devise (Prosthetic leg)**

193.     As stated in paragraph 44 Stanley Daves prosthetic leg was taken and put into property. Stanley Daves's disability does not require him to be confined to a wheelchair.

He was put in the wheelchair because the intake nurse Jane Doe One refused to give him crutches stating it was a security risk.

194.     The fact is that Stanley Daves has been jailed numerous times never was his refused crutches if his prosthetic leg was taken.

195.     The Plaintiff made no qualms about it at that time because first and far most, he did not want to be permanently house in the medical unit. Secondly, he did not believe he would be detained at ACDF for any extended amount of time. Last but not least, quite frankly he needed a break from wearing his prosthetic leg. Stanley had developed an ulcerated sore on his stump that was in need of treatment. Stanley Daves has always been a positive person. Stanley has overcome a lot of adversity in his life. Finding good in the worse of circumstances. A true believer in "everything happens for a reason". After recovering from the shock of being arrested Stanley reverted back to positive thinking. In that maybe all of this was happening for the simple fact that he needed a chance to heal his wounds.

196.     By October 20th Stanley Daves had become content with his current situation of being detained at the ACDF. He had met with an attorney on October 9th; the wheels of justice were now turning in his favor. He had even adjusted to being temporarily confined to the wheelchair. As it turned out, the sheriff deputies in E unit like to play musical chairs. Often taking most of the chairs out of the unit in the middle of the night and putting them in the programs room on the upper level. When morning chow rolled around the majority of prisoners wouldn't have anywhere to sit and eat. The wheelchair turned into a convenience more than a hindrance. The power of positive thinking in action.

197.     As established within all the paragraphs of this complaint; the Plaintiffs' world was turned upside down. The wheelchair turned convenience now created a nightmare. After two months of having to crawl up and down stairs on his hands and knees the plaintiff finely had enough. On or around December 07, 2017 Stanley Daves met with C.C.S. employee, Dr. Christopher Rose concerning his shoulder injury, During the

meeting the Plaintiff explained the situation and asked Doctor Rose to have his prosthetic leg made available to his prosthetic provider at Adaptec Prosthetic in order to make necessary adjustment in order for the Plaintiff to resume wearing his prosthesis.

198.     Doctor Rose diverted the subject by saying he would have to check with the facility commanders.

199.     Stanley Daves met with both his mental health counselor and case manager from the Adams County Community Reach Center. Asking for their assistance with having Adaptec Orthopedic and Prosthetics come to the jail to make the needed adjustment done on his prosthetic leg so he can start wearing it. According to the Adams County Community Reach employees this request was denied by the Adams County Defendants and/or C.C.S. Defendants.

200.     At a later date while meeting with Doctor Rose the Plaintiff was informed that the request had been denied on the grounds of it creating an "unnecessary financial burden" on the ACDF.

201.     The Plaintiff explained to Doctor Rose that there would not be any costs attached to servicing of the prosthesis. That any and all adjustment and repairs needed on the prosthetic leg would be done free of charge therefore would be no financial burden on ACDF. Doctor Rose continued to deny the plaintiffs request for a medical devise.

202.     The Defendants, Adams County Defendants and C.C.S. violated the Plaintiffs Rights under the ADA Title II Failure to accommodate.

203.     Adams County Government, Sheriff and C.C.S. should be held liable for a "Policy" of minimizing medical costs, delaying treatment and refusing to accommodate a disabled prisoner.

# V. CLAIMS FOR RELIEF:

**FIRST CLAIM FOR RELIEF:**

**204.**     42 U.S.C. § 1983 First Amendment - guarantee of freedom of speech association and petition; whereas the State cannot impede an individual's ability to consult counsel on legal matters. Furthermore, the right to obtain legal advice does not depend on the purpose for which the advise was sought.(Against Adams County Defendants.)

**205.**     Plaintiff hereby incorporate all paragraphs of this Complaint as if fully set forth herein.

**206.**     Adams County Defendants are persons within the meaning of 42 U.S.C. § 1983.

**207.**     At all times relevant to the allegations in this Complaint, Adams County Defendants were acting under color of state law and had a legal obligation to provide constitutionally adequate access to court services and attorney/client privileges for "Detainees "without interference.

**208.**     Stanley Daves had a clearly established right under the First Amendment to the United States Constitution to freedom of speech association and petition; whereas the State cannot impede an individual's ability to consult counsel on legal matters.

**209.**     Each individual Defendant knew or should have known of this clearly established right at the time Stanley Daves injuries occurred.

**210:**     The Plaintiffs First Amendment right was clearly violated by the Defendants failure to operate a "Detention Facility" in a Constitutional and lawful manner by continually impeding his ability to consult counsel on two fronts:

    **a.** Failing to allow him elevator services to and from the upper level of the facility to where, by "jail policy and/or procedure" attorney/client visits were conducted, forcing him to abandon his wheelchair and crawl, on his hands and knees up and down two flights of stairs in order to meet with his attorneys.

    **b.** Refusing to provide telephone service(s) in order for the plaintiff to keep in contact and consult with counsel and family. Thereby leaving the Plaintiff incommunicado for 36 days.

211.      The acts or omissions of each individual Defendant were the legal and proximate cause of Stanley Daves's injuries.

212.      The acts and omissions of each individual Defendant caused Stanley Daves damages in that he suffered loss of "Liberty and Property".

213.      Because Stanley was left in a state of incommunicado with his attorneys and family for 36 days his entire estate valued at more the one hundred fifty thousand dollars was lost by default. Depriving him of "Property". Making it impossible for him to secure the funds necessary to:

    **a.** Make Bond set at one hundred fifty thousand dollars. Depriving him of "Liberty".

    **b.** Pay his defense attorney(s) retainer fees of twenty thousand dollars. Leaving him is a state of dismay adding to the extreme physical and mental pain he suffered while he was in Defendants' custody.

214.      The intentional actions or inactions of each individual Defendant as described herein intentionally deprived Stanley Daves of his First Amendment Right guarantee of freedom of speech association and petition; whereas the State cannot impede an individual's ability to consult counsel on legal matters, and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused him other damages.

**SECOND CLAIM FOR RELIEF:**

215.　　　42 U.S.C. § 1983 Sixth Amendment - The Constitutional Right to effective assistance of counsel, and jail procedures that cause "unreasonable interference with Stanley Daves's ability to consult with counsel. (Against Adams County Defendant, Adams County Sheriff Deputy Stanley Watson).

216.　　　Plaintiff hereby incorporate all paragraphs of this Complaint as if fully set forth herein.

217.　　　Adams County Defendants are persons within the meaning of 42 U.S.C. § 1983.

218.　　　At all times relevant to the allegations in this Complaint, Adams County Defendants were acting under color of state law and had a non-delegable duty to operate a "Detention Facility" in a Constitutional and legal manner.

219.　　　Stanley Daves was a citizen of the United States and all of the individual Defendants are persons under 42 U.S.C. § 1983.

220.　　　Stanley Daves had a clearly established right under the Sixth Amendment to the United States Constitution to the effective assistance of counsel without Government interference.

221.　　　At all times relevant to the allegations in this Complaint, each individual Defendant knew of or should have known and disregarded the unconstitutionality of their "Policy(s), Procedures and/or Actions.

222.　　　The Adams County Defendants and named and unnamed Sheriff Deputies by policy(s) and/or jail procedures caused "unreasonable interference with Stanley Daves's ability to consult with counsel. The unreasonable interference came in two forms:

　　　**a.**　Access to services including the use of a telephone for a period of thirty six days.

**b.** Elevator services to and from the upper level of the facility to where by jail policy(s) and/or procedures the attorney/client meetings took place. Thereby Forcing him out of his wheelchair to attempt to ascend and descend two flights of stairs on his hands and knees in order to meet with counsel. These unconstitutional acts created a huge amount of stress, anxiety, fear, and imbarrassment to Stanley Daves mental state and sense of wellbeing.

223.    The acts or omissions of each individual Defendant were the legal and proximate cause of Stanley Daves's injuries.

224.    The acts and omissions of each individual Defendant caused Stanley Daves damages in that he suffered loss of "Liberty and Property" and extreme physical and mental pain while he was in Defendants' custody.

225.    The intentional actions or inactions of each individual Defendant as described herein intentionally deprived Stanley Daves of his Sixth Amendment Constitutional Right to effective assistance of counsel, and jail procedures that cause "unreasonable interference with Stanley Daves's ability to consult with counsel, and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused him other damages.

**THIRD CLAIM FOR RELIEF:**

226.    -- 42 U.S.C. § 1983 Fourteenth Amendment - Failure to Provide Medical Care and Treatment (Against All Defendants)

227.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth therein.

228.    At all times relevant to the allegations in this Complaint, Defendants were acting under color of state law.

229.     Stanley Daves was a citizen of the United States and all of the individual Defendants are persons under 42 U.S.C. § 1983.

230.     Stanley Daves had a clearly established right under the Fourteenth Amendment to the United States Constitution to be free from deliberate indifference to his known serious medical needs.

231.     Each individual Defendant knew or should have known of this clearly established right at the time of Stanley Daves injuries.

232.     At all times relevant to the allegations in this Complaint, each individual Defendant knew of and disregarded the excessive risks associated with Stanley Daves's disability and serious medical condition.

233.     Nevertheless, with deliberate indifference to Stanley Daves's constitutional right to adequate medical care, as provided by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, Defendants knowingly failed to examine, treat, and/or care for Stanley Daves's condition for four months after Stanley was injured at the hands of the Defendants.  They did so despite their knowledge of Stanley Daves's serious medical needs, thereby placing him at risk of serious physical, mental and emotional harm. Therefore, Defendants knew or were aware that Stanley Daves faced a substantial risk of harm and disregarded this excessive risk by failing to take measures to reduce it.

234.     When Stanley Daves alerted each individual Defendant to his need for medical assistance, Defendants acted with deliberate indifference to Stanley Daves's readily apparent need for medical attention and his constitutional rights by refusing to obtain and provide any medical treatment for him.

235.     All of the deliberately indifferent acts of each individual Defendant were conducted within the scope of their official duties and employment.

236.      The acts or omissions of each individual Defendants were the legal and proximate cause of Stanley Daves's injuries.

237.      The acts and omissions of each individual Defendant caused Stanley Daves damages in that he suffered extreme physical and mental pain while he was in Defendants' custody.

238.      The intentional actions or inactions of each individual Defendants as described herein intentionally deprived Stanley Daves of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused him other damages.

**FORTH CLAIM FOR RELIEF:**

239.      42 U.S.C. § 1983 Fourteenth Amendment – Municipal Liability (Against Adams County Defendants and C.C.S. WellCare)

240.      Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

241.      Adams County Defendants and C.C.S. WellCare are persons within the meaning of 42 U.S.C. § 1983.

242.      At all times relevant to the allegations in this Complaint, Adams County Defendants were acting under color of state law and had a non-delegable duty to provide constitutionally adequate medical care for Detainees.

243.      At all times relevant hereto C.C.S. WellCare was willfully a participant in a joint activity and acting under color of state law, as the legal and functional equivalent of a municipality providing medical care to Detainee's.

244.    The intentional acts or omissions of Adams County Defendants and C.C.S. WellCare were conducted within the scope of their official duties and employment.

245.    C.C.S. WellCare and Adams County Defendants' deliberately indifferent and unconstitutional policies, customs, and/or practices regarding provision of constitutionally adequate medical care as described were the moving and proximate cause of Stanley Daves's injuries.

246.    C.C.S. WellCare and Adams County Defendants deliberately indifferently failed to properly train and supervise their employees to provide necessary medical care to detainees at ACDF.

247.    The failures in training, supervision, and policy regarding providing necessary medical assessment and care were so obvious that the failure to provide medical assessment and care was deliberately indifferent to the rights of Stanley Daves and the public.

248.    C.C.S. WellCare and Adams County Defendants' deliberately indifferent customs, and failures to train/supervise, are all actionable policy decisions that were moving forces and proximate causes of the violation of Stanley Daves's constitutional rights.

249.    The policies, customs, and practices of C.C.S. WellCare and Adams County Defendants as described herein were also moving forces in and proximate causes of the deprivation of Stanley Daves's right to due process and of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused Plaintiff other damages.

250.    Adams County Defendants are also directly liable for their own policies and actions that are moving forces in this constitutional injury under the contract between Adams County and C.C.S. WellCare, as Adams County and Sheriff Michael McIntosh

participated in negotiating and sponsoring this contract despite the knowledge of C.C.S. WellCare pervasive pattern of civil rights and human rights violations.

**FIFTH CLAIM FOR RELIEF:**

251.   ´42 U.S.C. § 1983 Fourteenth Amendment - Due Process Clause "No Punishment". (Against All Defendants),

252.   Plaintiff hereby incorporate all paragraphs of this Complaint as if fully set forth therein.

253.   At all times relevant to the allegations in this Complaint, Defendants were acting under color of state law.

254.   Stanley Daves was a citizen of the United States and all of the individual Defendants are persons under 42 U.S.C. § 1983.

255.   Stanley Daves had a clearly established right under the Fourteenth Amendment "Due Process Clause "to the United States Constitution to be free from "Punishment", and/or deliberate indifference to his health, safety and well-being.

256.   Each individual Defendant knew or should have known of this clearly established right(s) at the time Stanley Daves injuries occurred.

257.   . At all times relevant to the allegations in this Complaint, each individual Defendant knew of and disregarded the excessive risks associated with Stanley Daves, an "at risk disabled adult" being forced to hop, crawl and/or climb/descend two flights of stairs on numerous occasions. Refusing him services (elevator) of a federally funded establishment. Forcing him to live in Inhumane living conditions. All of which cannot be considered anything less than Punishment and infliction of pain through a course of conduct that shocks the conscience.

258.     Nevertheless, with deliberate indifference to Stanley Daves constitutional right to be free from Punishment as provided by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, Defendants knowingly, intentionally and maliciously failed to provide safe and reasonable access to program, services resulting in Stanley Daves injuries. They did so despite their knowledge of Stanley Daves disability thereby placing him at risk of serious physical and mental injury. Therefore, Defendants knew or were aware that Stanley Daves faced a substantial risk of harm and disregarded this excessive risk by failing to take measures to reduce it by providing elevator services or other means and/or locations for the Plaintiff to attend programs and services at bare minimum. Inhumane living conditions as in being forced to live in a flooded cell and exposure to sewage water consisting of feces and other human waste for up to seventy two hours on numerous occasions. All of these unconstitutional acts committed through a course of conduct that shocks the conscience.

259.     Each and every one of the Defendants had a duty to ensure the safety and well-being of detainees and Stanley Daves in ACDF.

260.     278.     Each and every one of the Defendants failed to discharge these duties.

261.     All Defendants acted intentionally in failing to adequately insure the safety and well being of Stanley Daves and that he was treated in accordance with the United States Constitution.

262.     All Defendants are responsible for their actions and was the moving force and proximate cause of the violations of Stanley Daves's constitutional rights.

263.     The acts or omissions of All Defendants caused Stanley Daves damages in that he suffered extreme physical and mental pain during the approximately eight months.

**SIXTH CLAIM FOR RELIEF:**

264.    42 U.S.C. § 1983 Fourteenth Amendment – Municipal Liability (Against Adams County Defendants).

265.    Plaintiff hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

266.    Adams County Defendants are persons within the meaning of 42 U.S.C. § 1983.

267.    At all times relevant to the allegations in this Complaint, Adams County Defendants were acting under color of state law and had duty to operate ACDF in a constitutional and legal manner.

268.    The intentional acts or omissions of Adams County Defendants and were conducted within the scope of their official duties and employment.

269.    Adams County Defendants' deliberately indifferent and unconstitutional policies, customs, and/or practices regarding and provision of constitutionally adequate access to services, programs and activities as described were the moving and proximate cause of Stanley Daves Physical Emotional and Constitutional injuries.

270.    Adams County Defendants deliberately indifferently failed to properly train and supervise their employees to provide safe access to services programs and activates and to detainees and Stanley Daves at ACDF.

271..    The failures in training, supervision, and policy regarding providing access to programs, services and/or activities were so obvious that the failure to provide medical assessment and care was deliberately indifferent to the rights of Stanley Daves, and the public.

272.     Adams County Defendants' deliberately indifferent customs, and failures to train/supervise, are all actionable policy decisions that were moving forces and proximate causes of the violation of Stanley Daves constitutional rights.

273.     The policies, customs, and practices of Adams County Defendants as described herein were also moving forces in and proximate causes of the deprivation of Stanley Daves right to due process and of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused Plaintiff other damages.

274.     Adams County Defendants are also directly liable for their own policies, procedures and/or actions in that they were moving forces in this constitutional injury(s) including civil rights and human rights violations.

## SEVENTH CLAIM FOR RELIEF:

275.     42 U.S.C. § 1983 Fourteenth Amendment – Equal Protection Failure (Against All Defendants)

276.     Plaintiff hereby incorporates all other paragraphs including 115 through 131 of this Complaint as if fully set forth herein.

277.     By their actions, as described herein, Defendants, under color of statute, ordinance, regulation, custom, or usage, subjected Plaintiff to the deprivation of the rights, privileges, or immunities secured by the Constitution and laws of the United States.

278.     Defendants discriminated against the Plaintiff, in whole or in part, because of his status as an at risk adult with a disability, denying him equal protection under the law as required under the Fourteenth Amendment to the U.S. Constitution.

279.     As stated in paragraphs 115 through 131 Plaintiff was housed in a cell that was prone to extensive and frequent flooding, consisting of sewage water, human feces and

other by products. In spite of the Plaintiffs disabilities the cell was not equipped for disabled wheelchair bound prisoners. Combine that with the injuries the Plaintiff sustained Making the very basics of human need unreasonable difficult and/or impossible. This is based, in whole or in part, on his disabilities or manifestations of his disabilities.

280.     Persons without disabilities were not subjected to the abuses the Plaintiff was subjected to, as described herein. This difference in treatment was due, in whole or part, to Plaintiff's status as a person with disabilities. This abusive and illegal treatment was reserved solely for persons with disabilities.

281.     Adams County Defendants decision to treat disabled prisoners, including Plaintiff, worse than the rest of the prisoner population is unconstitutional.

282.     There is no rational basis for a ACDF policy(s) that would force anyone to live in cell conditions, crawl on their hands and knees up and down stairs in order to attend any programs, services and/or activities offered the general population at ACDF. However, the acts and/or omissions of the Adams County Defendants to impose such conditions on persons with disabilities, including Plaintiff shocks the conscience, and cannot be justified as relating to any rational basis.

283.     The acts or omissions of Adams County Defendants were conducted within the scope of their official duties and employment under color of law.

284.     The actions of all Defendants, as described herein, intentionally deprived Plaintiff of the securities, rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused him other damages in amounts to be ascertained at trial.

## EIGHT CLAIM FOR RELIEF:

285.    (42 U.S.C. § 1983) Supervisory Liability, Failure to Train and Supervise. (Against Adams County Defendants, Sheriff Michael McIntosh, and Commander Mykelann Wise).

286.    Thereby incorporates all other paragraphs of the Complaint as if fully set forth herein.

287.    The Supervisory Defendants each have duties to train and supervise Sheriff Deputies, medical personal, and other Adams County employees, and other personnel in order to ensure the safety and well-being of "Detainees" entrusted to their care and supervision.

288.    Each of the Supervisory Defendants (Adams County Defendants, C.C.S. (WellCare), Commander Wise and other unnamed Defendants) failed to discharge these duties.

289.    The Supervisory Defendants acted intentionally in failing to adequately train and supervise Sheriff Deputies, medical and other personnel.

290.    As a result, Defendants regularly violated the Plaintiffs constitutional rights by their failures to operate ACDF in a professional and constitutional manner in violation of State and Federal Laws in violation of his constitutional rights.

291.    The deliberately indifferent unconstitutional actions of all Defendants has caused Stanley significant trauma, financial and personal losses that have all but destroyed his positive outlook on life and the justice system and humanity in general. This abuse has also made him more fearful of Sheriff Deputies and other authority figures. The Plaintiff already struggling against serious disabilities, including PTSD. The illegal actions of the Defendants have made Stanley Daves's life immensely more difficult financially, emotionally and medically and this will continue indefinitely.

292.    Had the Supervisory Defendants made any effort to properly train and supervise the other Defendants, Plaintiff would not likely have suffered these egregious and conscience- shocking abuses by Defendants, nor would Plaintiff have likely sustained the damages that he had sustained and will sustain in the future.

293.    The Supervisory Defendants' failure to properly train and supervise their subordinate employees was the moving force and proximate cause of the violation of Plaintiff's constitutional rights as described herein.

294.    The acts and/or omissions of Defendants were conducted within the scope of their official duties and employment and under color of law.

295.    The acts and/or omissions of the Supervisory Defendants caused Plaintiff's damages in that he suffered extreme physical and mental pain during the many months of abuse that he endured and the lasting damage that he will endure in the future.

296.    The actions of the Supervisory Defendants, as described herein, deprived Plaintiff of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused him other lasting damages.

**NINTH CLAIM FOR RELIEF:**

297.    VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973 (29 U.S.C. §§ 794 et seq.) (All Defendants)

298.    Plaintiff hereby incorporates all other paragraphs of the Complaint as if fully set forth herein.

299.    Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 ("Section 504"), and the regulations promulgated there under, 34 C.F.R. Part 104, prohibit discrimination against persons with disabilities. Stanley Daves has multiple disabilities as alleged previously and is a protected person under Section 504.

300.     Section 504 prohibits the exclusion from the participation in, or being denied the benefits of, or being subjected to discrimination under, any program or activity receiving federal financial assistance. Congressional authority to condition federal funding under this Act is derived from the enumerated powers contained in Article 1, Section 8 of the U.S. Constitution.

301.     Adams County Detention Facility is a recipient of federal financial assistance.

302.     The practices described above, including but not limited to, forcing Stanley Daves to crawl up and down stairs on his hands and knees in order to attend attorney/clients meeting and Religious services Plaintiff were discriminatory and denied Plaintiff the benefits of participation in a public run facility.

303.     Detainees without disabilities were not subjected to the abuses the Plaintiff was subjected to, as described herein. Plaintiff was mistreated in violation of law as a direct result of his disabilities, and the manifestation of these disabilities.

304.     Detainees without disabilities were not subjected to the abuses the Plaintiff was subjected to, as described herein. This difference in treatment was due, in whole or part, to Plaintiff's status as a person with disabilities, on persons without disabilities. No other prisoners were subject the treatment that Stanley Daves was subject to in order to benefit from programs, services and/ or activities offered at and by ACDF. This abusive and illegal treatment was reserved solely for persons with disabilities.

305.     Defendants have violated Plaintiff's rights under Section 504 and the regulations promulgated there under by denying Plaintiff the benefits of receiving full and equal access to the services, programs and activities offered within the Adams County Detention Facility.

306.     Defendant's practices were intentionally discriminatory and were taken with deliberate indifference to the strong likelihood that the practices would result in a violation of Plaintiff's federally protected rights.

307.     As a direct and proximate result of Defendant's violation of Section 504, Plaintiff has suffered, continues to suffer, and will suffer in the future damages to his person including, but not limited to, pain, humiliation, anxiety, mental anguish, emotional distress, and damage to his personal relations in amounts to be ascertained according to proof at trial.

## TENTH CLAIM FOR RELIEF:

308.     VIOLATION OF THE AMERICANS WITH DISABILITIES ACT ("ADA") (42 U.S.C. §§12131 et seq.) (All Defendants)

309.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

310.     Title II of the ADA, 42 U.S.C. §12131 et seq. and the regulations there under, 28 C.F.R. Part 35, governing state and local governmental entities, protects persons from discrimination on the basis of disability by public entities. Stanley Daves is a at risk disabled adult as alleged previously and is a protected person under the ADA.

311.     The ADA prohibits the exclusion from participation in, or being denied the benefits of the services, programs, or activities of the public entity, or being subjected to discrimination by such entity.

312.     The discriminatory practices described herein excluded Plaintiff from participating in and receiving the benefits regularly afforded to non disabled detainees at the ACDF including but not limited to reasonable access to court services, religious services, and medical care. Services as simple as safely transporting the Plaintiff back

and forth between floors of the facility in an elevator could not be accomplished in a constitutional manner.

313.     The Defendant's practices were intentionally discriminatory and exhibited a deliberate indifference to the strong likelihood that the pursuit of these practices would result in a violation of Plaintiff's federally protected rights.

314.     Each of the Defendants violated Plaintiff's rights under the ADA and the regulations promulgated there under, denying Plaintiff the benefits of the services, programs, and activities to which he was otherwise entitled from the Adams County Defendants. Plaintiff was mistreated in violation of law as a direct result of his disabilities, and the manifestation of these disabilities.

315.     Detainees without disabilities were not subjected to the abuses the Plaintiff was subjected to, as described herein. This difference in treatment was due, in whole or part, to Plaintiff's status as a person with disabilities, on persons without disabilities. This abusive and illegal treatment was reserved solely for persons with disabilities.

316.     As a direct and proximate result of Defendants' violation of the ADA, Plaintiff has suffered and continues to suffer injuries to his person, including, but not limited to, pain, humiliation, anxiety, mental anguish, emotional distress and damage to his personal relations in amounts to be ascertained according to proof at trial.

## ELEVENTH CLAIM FOR RELIEF:

(Against all Defendants)

317.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

318.     As a result of the deliberate indifference and/or negligence of Defendants as described above

319.   Stanley Daves has suffered injuries and damages, including, but not limited, to the expenses related to the complete loss of his estate, emotional distress and pain and suffering, and loss of enjoyment of life. Expenses related to his prosthetic leg, medical expenses related to his shoulder injury including physical and occupational therapy before and after shoulder surgery, medical expenses related to confinement to the wheelchair including but not limited to physical and occupational therapy, mental health treatment and therapy.

**331. PRAYER FOR RELIEF WHEREFORE,** Plaintiff respectfully request that this Court enter judgment in his favor and against Defendants, and grant:

(a) Appropriate relief at law and equity;

(b) Declaratory relief and other appropriate equitable relief;

(c) Economic losses on all claims allowed by law;

(d) Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

(e) Punitive damages on all claims allowed by law and in an amount to be determined at trial;

(f) Attorneys' fees and the costs associated with this action, including expert witness fees, on all claims allowed by law;

(g) Pre- and post-judgment interest at the highest lawful rate;

(h) Any further relief that this Court deems just and proper, and any other relief as allowed by law.

PLAINTIFF HEREBY DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE.

Stanley Eugene Daves seeks a trial by jury on all issues so triable.

Respectfully submitted this 14TH day of October, 2019.

x _____ Stanley Eugene Daves

JS 44 (Rev 06/17)    District of Colorado

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Stanley E. Daves

**DEFENDANTS**
Adams County Government, Adams County Detention Facility, Sheriff M. Macintosh, sheriff deputies. Correct Care solutions/WellCare Inc. , employees of all listed above

**(b)** County of Residence of First Listed Plaintiff   Adams County
*(EXCEPT IN U S  PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Adams County
(IN U.S. PLAINTIFF CASES ONLY)
NOTE.   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*
N/A

Attorneys *(If Known)*
N/A

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question
  *(U S  Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for. Nature of Suit Code Descriptions.

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☒ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

**Other:**
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

### IMMIGRATION
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U S  Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*
42 U.S.C. § 1983
Brief description of cause:
AP Docket

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE                          DOCKET NUMBER

DATE                       SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT              APPLYING IFP              JUDGE              MAG. JUDGE